UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELIZABETH REID,

    Plaintiff,

            Case No. 20-cv-1406-pp

  v.

WROUGHT WASHER MANUFACTURING INC.,

    Defendant.

## ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISQUALIFY COUNSEL (DKT. NO. 13)

On September 10, 2020, the plaintiff filed a complaint alleging that the defendant—her former employer—had violated her rights under the Family and Medical Leave Act (FMLA), improperly denying her leave and improperly terminating her. Dkt. No. 3. On February 24, 2021, the court entered a scheduling order requiring that, among other things, the parties must complete discovery by September 2, 2021. Dkt. No. 12. Five months later, on July 12, 2021, the defendant filed a motion under Wis. Stat. §§753.03 and 802.01 to disqualify the plaintiff's law firm, Alan C. Olson & Associates SC (Olson Firm), as counsel of record or co-counsel. Dkt. No. 13. The defendant asserted that in March 2020, its human resources manager, Denise Schuppert, had consulted with the Olson Firm "for advice about an incident involving the termination of a[n] . . . employee [of the defendant]," and claimed that the Olson Firm "had a lengthy attorney-client relationship with Ms. Schuppert." Dkt. No. 14 at 2. The

1

plaintiff responded that Attorney Nick McLeod, one of the Olson firm's lawyers, had consulted with Schuppert for about one hour on February 28, 2020 to answer questions but later confirmed that he would not represent her, did not talk to Schuppert about the plaintiff in this case and had no communication with Schuppert after March 4, 2020. Dkt. No. 17 at 1. The plaintiff's counsel claims there is no ongoing attorney/client relationship. Id.

The court will deny the motion without prejudice.

A.    The Defendant's Motion

The defendant alleges that in the days leading up to the scheduled May 12, 2021 deposition of Schuppert, defense counsel "learned that the Olson Firm had a lengthy attorney-client relationship with Ms. Schuppert." Dkt. No. 14 at 2. The defendant asserts that the Olson Firm "began representing" Schuppert in the 1990s, at which time it gave her advice "in an employment dispute related [to] payment of commissions by her then employer, US Cellular Company." Id. The defendant says that the Olson Firm "again" represented Schuppert in the summer of 2019, relating to "a dispute with her direct supervisor in the HR department of the Racine Unified School District." Id.

Most relevant to the motion, the defendant asserts that the Olson Firm "represented" Schuppert in "March of 2020," when she "turned to the firm for advice about an incident involving termination of a [defendant's] employee." Id. The defendant says that Schuppert was concerned that she could be held personally liable "for the allegedly disparate treatment of employees of different races." Id. at 2-3. The defendant says that "[i]n that representation," Schuppert

2

spoke to an Olson Firm attorney named Nick McLeod, discussing "not only the facts of the particular incidents underlying [Schuppert's] concerns, but also her role as HR director, [the defendant's] employment policies, and her application of those policies on behalf of the company, including her role in terminating employees." Id. at 3. The defendant asserts that it "denies any wrongdoing in all matters—both the 2020 issues for which Ms. Schuppert sought counsel and this suit—but in seeking outside advice Ms. Schuppert revealed confidential employment-related information to her lawyers, including how the company applies its employment policies when terminating employees." Id. The defendant asserts that Schuppert's "lawyers"—the Olson Firm—"have re-appeared as counsel for an adverse party," and it argues that allowing "those lawyers to use that information to gain an advantage in this suit—including by deposing their own former client on these same subject matters—is inherently unfair and would pervert the course of justice." Id.

The defendant argues that under Wisconsin law, "a non-client party has standing to move for disqualification of opposing counsel, when the prior representation is so connected with the current litigation that the prior representation is likely to affect the just and lawful determination of the non-client party's position." Id. (quoting Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n, 333 Wis. 2d 402, 438 (Wis. 2011)). The defendant notes that the plaintiff has sued on claims that she was denied FMLA rights and unlawfully terminated by the defendant and asserts that Schuppert "was involved in granting FMLA leave and terminating employees during the time [the plaintiff]

3

worked there." Id. at 4. The defendant says that Schuppert "not only has unique insights into [the defendant's] employment policies and procedures, but she is she is also a key fact witness . . . ." Id. It asserts that Schuppert will testify about the defendant's employment policies, generally and as they relate to this case, and the defendant asserts in its brief (although it is not alleged in the complaint) that Schuppert "handled" the termination of the plaintiff for the defendant. Id. The defendant maintains that because the plaintiff says she was wrongfully terminated, and because Schuppert "handled" the termination for the defendant, "Ms. Schuppert and [the defendant] are entirely unified in their positions." Id. For this reason, the defendant maintains that it has standing to bring the motion to disqualify.

Moving to the standard for disqualification, the defendant asserts that a court should disqualify a law firm if:

(1) there was an attorney-client privilege between counsel and the former client;
(2) the current representation involves the same or a substantially related matter as the former representation;
(3) the interests of the subsequent client are materially adverse to those of the former client; and
(4) the former client didn't consent to the new representation.

Id. at 5 (citing Foley-Ciccantell, 333 Wis. 2d at 413). The defendant argues that "intent or malfeasance is not a necessary requirement for disqualification," and that "[r]epresentation by one lawyer in a firm imputes disqualification to all members of the firm." Id. (citing Foley-Ciccantelli, Id. at 410 n.3 and referencing Wisconsin SCR 20:1-10). The defendant asserts that "there is no dispute that Ms. Schuppert had an attorney-client relationship with the Olson

4

Firm, or that she has not consented to its representation of [the plaintiff] in this case;" it contends that it is "obvious" that the plaintiff's interests are "materially adverse" to Schuppert's because the plaintiff has sued Schuppert's employer alleging that Schuppert's conduct led to liability for the company. Id. The defendant opines that "[s]hy of directly suing Ms. Schuppert individually, it is hard to be much more adverse." Id.

The defendant concedes that the Olson Firm's "representation" of Schuppert in 2020 was not "in the same matter," but maintains that it was "in a substantially related one." Id. The defendant asserts that

> [b]oth involved employment disputes between an employee and employer, both involved questions surrounding termination of employees, both involved [defendant] specific employment policies and practices, and both involved Ms. Schuppert's application of those policies and practices. Further, Ms. Schuppert shared with the firm her insights on [the defendant's] policies and how she applies them.

Id. at 6. The defendant argues that the Olson Firm not only stands in direct conflict with its former client in this case, "but it also has gained access to [the defendant's] confidential business information which can be used to [the plaintiff's] advantage." Id. The defendant concludes that "[d]isqualification is appropriate because the Olson Firm represented a key witness in a substantially related matter, but also because to allow it to continue in the case give[s] [the plaintiff] an unfair advantage [she] is not entitled to." Id.

B.    Plaintiff's Response

In opposition, the plaintiff characterizes disqualification as a "drastic measure" that deprives a party of the representation of his or her choosing and

5

asserts that such motions should be "viewed with extreme caution for they can be misused as techniques of harassment." Dkt. No. 17 at 2 (citing <u>Freeman v. Chi. Musical Instrument Co.</u>, 689 F.2d 715, 721 (7th Cir. 1982)). The plaintiff asserts that federal law governs motions to disqualify and that federal courts do not base such decisions on state codes of professional responsibility. <u>Id.</u> The plaintiff notes that the defendant cited no federal law in support of its motion. <u>Id.</u> at 3. The plaintiff asserts that the federal standard requires the court to determine whether a substantial relationship exists between the subject matter of the prior and present representations; if the answer to that question is yes, the court must determination whether the presumption of shared confidences with regard to the prior representation has been rebutted. <u>Id.</u> (quoting <u>Schiessle v. Stephens</u>, 717 F.2d 417, 420 (7th Cir. 1983)). If the court determines the presumption has not been rebutted, it must decide whether the presumption has been rebutted with respect to the present representation; if not, disqualification is proper. <u>Id.</u> The plaintiff maintains that Schuppert's consultation with McLeod was not substantially related to the current litigation, and that the presumption of shared confidences has been rebutted. <u>Id.</u>

The plaintiff also complains of the "dilatory" nature of the defendant's motion, which the plaintiff alleges unreasonably delayed the current litigation. <u>Id.</u> at 3. The plaintiff asserts that as of May 11, 2021 the defendant had information from the plaintiff's counsel about Schuppert's 2020 consultation with McLeod, but that the defendant waited nine weeks to file the motion to

disqualify; she argues that this delay "brings the real motive behind the motion into question, and would at least imply that the concern is not as significant as Defendant would lead us to believe." Id.

The plaintiff next argues that the defendant has not demonstrated that Schuppert's consultation with McLeod and the current litigation are substantially related to each other, observing that the defendant has not presented any "firsthand information regarding any prior representation of Schuppert by the Plaintiff's law firm." Id. at 4. The plaintiff contends that the information the defendant has provided is hearsay, and that even if the court credits it, it shows only that Schuppert may have received advice on a wage issue with a different employer, a long-ago dispute with a supervisor at a school district and a question of Schuppert's personal liability in a potential race discrimination matter—none of which are related to the current FMLA case involving a "different employee with no allegations of personal liability against Ms. Schuppert." Id. at 5. The plaintiff asserts that Schuppert's consultation with McLeod was "limited to an hour in length to answer Ms. Schuppert's questions, limited to a finite amount of information," and that there was no ongoing relationship between Schuppert and the Olson Firm. Id.

Finally, the plaintiff argues that even if the court agrees that McLeod should be disqualified from representing the plaintiff, his disqualification may not be imputed to other members of the Olson Firm. Id. While conceding that there is a presumption that members of a law firm share client confidences with each other, the plaintiff observes that the presumption is rebuttable; the

7

plaintiff quotes <u>Freeman</u>, 689 F.2d at 723: "[I]f an attorney can clearly and effectively show he had no knowledge of the confidences and secrets of the client, disqualification is unnecessary and a court order of such might reasonably be regarded as abuse of discretion." <u>Id.</u> at 5-6. The plaintiff maintains that because the Olson Firm can "clearly and effectively" show that only McLeod has knowledge of the information he discussed with Schuppert in 2020 and knows nothing about the current case or its underlying facts, disqualification is unnecessary and the "Defendant's motion should be denied." <u>Id.</u>

> C.   <u>Defendant's Reply</u>

The defendant replies that "[w]ith due respect to the Alan C. Olson & Associates law firm," "the matters at issue here are just too close." Dkt. No. 19 at 1.[1] It asserts that "[t]here is no serious argument the Firm's representation of [the defendant's] HR Director on [the defendant's] HR issues is not 'substantially related' to the Firm's representation of Plaintiff versus [the defendant's] HR practices in this case." <u>Id.</u> at 1-2.

The defendant maintains that disqualification is not a drastic remedy and asserts that a court should have "no qualms about doing so when it is 'legitimate and necessary.'" <u>Id.</u> at 2 (quoting <u>Doe v. Catholic Archdiocese of Chi.</u>, No. 09 C 7656, 2010 WL 2293460, at *2 (N.D. Ill. June 8, 2010)). It asserts courts have broad discretion to disqualify and argues that "any 'doubts

---

[1] The defendant filed two reply briefs. Dkt. Nos. 19, 20. The briefs appear identical; the difference is that the defendant attached to the second reply brief an affidavit from defense counsel. Dkt. No. 20-1.

as to the existence of an asserted conflict of interest are to be resolved ***in favor*** of disqualification.'" Id. (quoting Westinghouse Elec. Corp. v. Gulf Oil Corp., 558 F.2d 221, 225 (7th Cir. 1978) (emphasis added by defendant)).

Next, the defendant notes that "both the Eastern and Western District of Wisconsin have looked to Wisconsin's state rules in deciding motions for disqualification." Id. at 3. Citing Silicon Graphics, Inc. v. ATI Technologies, Inc., 741 F. Supp. 2d 970, 980 (W.D. Wis. 2010), the defendant states that "the federal standard may be informed by multiple sources, including state ethical rules." Id. at 4. The defendant maintains that "whether state or federal rules apply is immaterial" because the option of screening McLeod from the other lawyers in the Olson Firm is available only "in circumstances that arise out of the lawyer's representation of the client *at a prior firm.*" Id. at 4-5 (citing ABA Model Rule 1.10) (emphasis added by the defendant). The defendant argues that because McLeod still is a member of the Olson Firm, screening McLeod from the case is not an available remedy. Id. at 5.

The defendant argues that McLeod's disqualification is "absolutely imputed to his firm." Id. The defendant quotes ABA Model Rule 1.10(a) and Wisconsin Supreme Court Rule 20:1.10(a) which provide that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 ('Conflicts of interest current clients') or 1.9 ('Duties to former clients) . . . " Id. The defendant says that "[s]creening a conflicted attorney from his firm isn't a permissible way around the mandatory disqualification of the firm when the

9

disqualification arises from his representation of a client at that firm." Id. at 5-6.

In addressing the plaintiff's claim that McLeod's consultation with Schuppert is not "substantially related" to the Olson Firm's representation of the plaintiff, the defendant counters that the similarities between the two are "stark." Id. at 6. The defendant claims that "both are employment cases, both involve questions of termination, both involve the application of [the defendant's] polices, and both involve Schuppert's applications of those policies." Id. While maintaining that defense counsel's affidavit—which the plaintiff characterized as "hearsay"—is "more than sufficient" to support the disqualification motion, the defendant stated that "in an abundance of caution" it had attached a declaration from Schuppert. Id.

As to the plaintiff's argument that the representations are unrelated because the current litigation is an FMLA case involving a different employee than the one about whom Schuppert consulted McLeod, the defendant responds that these arguments are merely a "pay no attention to the man behind the curtain" attempt to distract the court. Id. at 7. The defendant states that the key issue is "the fact that Ms. Schuppert shared confidential information with her (now Plaintiff's) Firm, including the ways in which she implements [the defendant's] employment policies." Id. The defendant alleges that it is immaterial how long that conversation lasted because the "Olson Firm is now in a position to use that information against their own former client." Id.

Finally, the defendant asserts that a motion to disqualify need not be made immediately; it says the court should consider "when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether the disqualification would result in prejudice to the nonmoving party." Id. at 7 (quoting Chem Waste Management Inc. v. Sims, 875 F. Supp. 501, 505 (N.D. Ill. 1995)). The defendant asserts that no delay or prejudice occurred here because defense counsel "halted the progression of this lawsuit as soon as he was informed of this specific conflict." Dkt. No. 19 at 8. The defendant concludes by asserting that "[t]he [Olson] Firm cannot represent an employee against the company when it has represented that very HR Manager on things adverse to the company." Id.

The defendant attached to the reply an affidavit from its counsel, Attorney Huitink, who avers that he first learned of the Olson Firm's potential conflict on May 7, 2021, when Schuppert advised him that she'd previously consulted the firm about "employment issues" related to the defendant "in a personal capacity." Dkt. No. 20-1 at ¶2. He avers that he received affidavits from the Olson Firm on May 11, 2021, after which he "undertook an investigation of this matter." Id. at ¶¶3-4. He also asserted that he has had to tend to other cases, such as a multi-day jury trial in state court in July 2021. Id. at ¶5. (As earlier noted, the defendant filed the motion to disqualify on July 12, 2021. Dkt. No. 13.)

11

D. <u>Governing Law</u>

"The Seventh Circuit has cautioned that disqualification 'is a drastic measure which courts should hesitate to impose except when absolutely necessary.'" <u>Freeman Equip., Inc. v. Caterpillar, Inc.</u>, 262 F. Supp. 3d 631, 634 (N.D. Ill. 2017) (quoting <u>Freeman</u>, 689 F.2d at 721)). Although disqualifying counsel may serve to protect one attorney-client relationship, it eradicates the other by denying a party the representation it chose. <u>Nelson v. Green Builders, Inc.</u>, 823 F. Supp. 1439, 1444 (E.D. Wis. 1993).

Ethical questions are governed by federal law,[2] but "[e]thical questions before the Court are governed by both precedent and the precepts of the Model Rules of Professional Conduct promulgated by the American Bar Association (ABA)." <u>Nelson</u>, 823 F. Supp. at 1443. The standards the federal court applies are "not dissimilar to those applied by the Wisconsin Supreme Court." <u>Id.</u> The federal standard "may be informed by multiple sources, including state ethical rules." <u>Silicon Graphics</u>, 741 F. Supp. 2d at 980 (citing <u>In re Snyder</u>, 472 U.S. 634, (1985)). The district court has a duty to "safeguard the sacrosanct privacy of the attorney-client relationship," which is the source of the court's "discretionary authority to disqualify counsel." <u>See</u> <u>Nelson</u>, 823 F. Supp. at 1444. "Since the ethical codes adopted by both the Wisconsin Supreme Court and the Court of Appeals for the Seventh Circuit are based on the ABA Model

---

[2] The defendant made its motion under Wis. Stat. §753.03, which gives *state* circuit courts general jurisdiction over the cases before them. Dkt. No. 13. It also made the motion under Wis. Stat. §802.01, which governs the pleadings allowed and the form of motions in *state* court. <u>Id.</u> Finally, it cited SCR 20:1.9, the Wisconsin Supreme Court rule governing duties to former clients. <u>Id.</u>

12

Rules of Professional Conduct, the standards applicable to disqualification motions in both forums are essentially identical." Callas v. Pappas, 907 F. Supp. 1257, 1260 (E.D. Wis. 1995) (citing Powell v. Adams, 763. F. Supp. 406, 407 (E.D. Wis. 1991)).

### 1. *Attorney-Client Relationship*

A federal court first must decide whether an attorney-client relationship that "subjected a lawyer to the ethical obligation of preserving confidential communications" existed. Nelson, 823 F. Supp. at 1444. "A party establishes an implied attorney-client relationship if it shows (1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney." Id. at 1445 (citations omitted). There is no need for the parties to execute a form contract and the existence of an attorney-client relationship is not dependent on the payment of fees. Id. "A fiduciary relationship may arise solely from the nature of the work performed and the circumstances under which confidential information is divulged." Id. (citation omitted).

Wisconsin's rules of professional conduct address circumstances in which someone consults with a lawyer about the possibility of forming an attorney-client relationship. SCR 20:1.18 is titled "Duties to prospective client," and says:

> (a)    A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b)    Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or

reveal that information learned in the consultation, except as SCR 20:1.9 would permit with respect to information of a former client.

(c)     A lawyer subject to par. (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in par. (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in par. (d).

(d) When the lawyer has received disqualifying information as defined in par. (c), representation is permissible if:

>     (1)     both the affected client and the prospective client have given informed consent, confirmed in writing, or
>
>     (2)     the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>
>     (i)     the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
>     (ii)     written notice is promptly given to the prospective client.

>     2.     *The "Substantially Related" Test*

"When a district court finds an attorney-client relationship it applies a test well-settled in the Seventh Circuit." Nelson, 823 F. Supp. at 1445. "A lawyer may be disqualified where he or she represents a party in a matter in which the adverse party is that lawyer's former client, if the subject matter of the two representations is 'substantially related.'" Id. (citation omitted). "In other words, a lawyer may not switch sides in substantially related representations." Id. "The substantially related test also implies to motions

14

seeking imputed or vicarious disqualification; *i.e.*, when a lawyer's firm represents a party in a matter in which the adverse party was represented by that lawyer as a member of another firm or by that lawyer's former firm." Id. at 1446 (citations omitted).

"A representation is substantially related to a prior representation when the lawyer *could have obtained* confidential information in the first that would have been relevant in the second." Id. (citing LaSalle Nat'l Bank v. Cty. of Lake, 703 F.2d 252, 255 (7th Cir. 1983); Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1266 (7th Cir. 1983)). If the court concludes that there is a substantial relationship between the representations, the former client does not need to prove that the lawyer received confidential information and used it against the former client. Id. at 1446.

> The substantial relationship test requires a court to conduct a three-part inquiry. First, the court must factually reconstruct the scope of the prior legal representation. Second, it must determine whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in the prior matters. Third, the court must decide whether that information is relevant to the issues raised in the litigation pending against the former client.

Id. (citations omitted).

If, after applying this test, the court concludes that the representations are substantially related, there is a presumption "that the lawyer received confidential information during his or her prior representation." Id. "[I]f the lawyer could have obtained confidential information in the first representation that would have been relevant in the second," "[i]t is irrelevant whether he actually obtained such information and used it against his former client, or

15

whether—if the lawyer is a firm rather than an individual practitioner—different people in the firm handled the two matters and scrupulously avoided discussing them." Analytica, 708 F.2d at 1266 (citations omitted). Although there is an exception to the presumption if a member of a law firm changes jobs and his new firm later is retained by an adversary of a client of the former firm, that exception is not applicable when "the firm itself changed sides." Id. at 1267.

"The substantial relationship test is not a rule of substantive law but a measure of the quantum of evidence required for proof of the existence of the professional obligation." Westinghouse, 588 F.2d at 224 (citing Consol. Theatres, Inc. v. Warner Bros. Circuit Mgmt. Corp., 216 F.2d 920, 924 (2d Cir. 1954)). Once the court reviews the evidence and determines the scope of the representation, "only where it is clearly discernible, 'that the issues involved in a current case do not relate to matters in which the attorney formerly represented the adverse party will the attorney's present relationship be treated as measuring up to the standard of legal ethics.'" Id. (quoting Fleischer v. A.A.P., Inc., 163 F. Supp. 548, 553 (S.D.N.Y. 1958)). "Doubts as to the existence of an asserted conflict should be resolved in favor of disqualification." Id. at 225 (citations omitted).

E.    Analysis

1.    *Timeliness*

Defense counsel Huitink avers that he first learned of a potential conflict of interest on May 7, 2021, when Schuppert informed him that she'd previously

16

consulted with the Olson Firm. Dkt. No. 20-1 at ¶2. A motion to disqualify should be "made with reasonable promptness after a party discovers the facts which lead to the motion." Freeman Equipment, 262 F. Supp. 3d at 636 (quoting Weeks v. Samsung Heavy Indus. Co., 909 F. Supp. 582, 584 (N.D. Ill. 1996)). In Freeman Equipment, the defendant told the court that the reason it had waited nearly six months to seek disqualification of the plaintiff's lawyer was because the lawyer's alleged conflict of interest became apparent only after plaintiff's counsel "manifested a 'desire to delve into internal . . . legal procedures [of the defendant].'" Id. The Freeman Equipment court found that this explanation was "unsupported by reasoned analysis and [did] not withstand scrutiny." Id.

Defense counsel in this case has provided a less obscure explanation. Attorney Huitink explains that on May 7, 2021, Schuppert told him that she previously had consulted the Olson Firm and had divulged confidential human resources information to the firm (although she didn't tell Huitink what that information was). Dkt. No. 20-1 at ¶2. He says that four days later—on May 11, 2021—he received affidavits from the Olson Firm, but that the affidavits provided "little detail" about what information Schuppert had shared with the firm. Id. at ¶3. Huitink says that he then undertook an investigation to determine whether whatever Schuppert had told the Olson Firm was "substantially related" to this litigation, at the same time that he was tending to other cases, "including a multi-day jury trial in Washington County Circuit Court in July." Id. at ¶¶4, 5.

The defendant filed the motion to disqualify on July 12, 2021—two months and five days after Huitink avers he learned about Schuppert's consultation with the Olson Firm. That would not be an unreasonable amount of time if Huitink was required to investigate further to find out the subject of Schuppert's discussion (or discussions) with the Olson Firm, and given that this was not the only professional obligation that Huitink had. At the time Huitink filed the motion, about two months remained before the discovery deadline. Dkt. No. 12.

On the other hand, the plaintiff filed this lawsuit on September 10, 2020, dkt. no. 3, and the defendant answered on October 2, 2020, dkt. no. 8. As of early fall 2020, the defendant knew that the plaintiff had sued it on grounds that implicated the defendant's human resources policy and thus, its human resources manager. The Olson Firm filed the complaint; the defendant knew the identity of the plaintiff's firm when it filed its answer in October 2020. Defense counsel asserts that HR manager Schuppert is a "key witness" and that she "handled" the plaintiff's termination. One wonders why it was not until May 2021—some seven months later—as defense counsel was preparing for Schuppert's deposition that Schuppert thought to tell defense counsel about her early 2020 consultation with McLeod. Viewed from that perspective, the timing of the motion appears even more dilatory than the timing of the motion in <u>Freeman Equipment</u>. But based on defense counsel's representations as an officer of the court that he did not become aware of Schuppert's 2020

consultation with McLeod until May 7, 2021, the court will not deny the motion based on delay.

2. *Attorney-Client Relationship*

The defendant insists that there is "no dispute" that Schuppert had an attorney-client relationship with the Olson Firm. *After* the plaintiff filed her response to the motion to disqualify, the defendant filed a declaration from Schuppert.[3] Dkt. No. 21. She describes herself as a "former client" of the Olson Firm, characterizing the purpose of the previous relationship as "review of compensation and employment contracts." Id. at 1. She declares that in March 2020 she consulted McLeod "regarding a human resources matter at [the defendant company]," that she was given no indication that other lawyers at the firm would not have access to the matters she and McLeod discussed and that she believed the consultation to be "fully confidential." Id.

Schuppert says that during this consultation, she "provided and discussed information related to [the defendant's] employment policies and procedures, as well as their application within the company." Id. She opines that the consultation "likely included information not otherwise available" to the plaintiff in this case. Id. at 2. She also says that the information she discussed with McLeod included confidential information not otherwise available to the Olson Firm, and it is her opinion that that information "could

---

[3] The court understands that the defendant's rationale is that it thought defense counsel's affidavit was sufficient. But the fact that the defense eventually filed a declaration from Schuppert begs the question why the motion was not supported by an affidavit from Schuppert to begin with.

19

be relevant in [the plaintiff's] above-captioned lawsuit against [the defendant]."

Id. She asserts that

> [b]ased on [her] personal knowledge, [the plaintiff] was terminated from the company under an identical management structure to that in place at the time of [her] March 2020 consultation with Atty. McLeod, which again involved discussion of [the defendant's] employment policies and procedures, as well as their application within the company, including by members of management other than myself.

Id.

Finally, Schuppert volunteers that she is not "comfortable" being deposed by the Olson Firm, "the same firm with which [she discussed] confidential [defendant company] matters," and says that she told defense counsel that (as well as about the "underlying prior attorney/client relationship with Olson & Associates") when she received her notice of deposition. Id.

The declaration, while vague, is carefully worded. Schuppert does not declare that she considered McLeod to be her lawyer or that she expected him to represent her or to take any action on her behalf. She says that she "provided" information and "discussed" things with McLeod.

With its opposition brief, the plaintiff filed an affidavit from McLeod, who averred that he was consulted by Schuppert for about one hour on February 28, 2020[4] to answer her questions. Dkt. 18-1 at 1. He asserted that he had "follow-up" communication with Schuppert on March 4, 2020, to inform her he

---

[4] Notably, McLeod specified the date on which Schuppert consulted him—February 28, 2020. Despite the fact that McLeod's affidavit was filed before Schuppert's, Schuppert represents that the consultation happened in March 2020.

20

would not be representing her. Id. McLeod averred that he never communicated with Schuppert about the plaintiff in this case, nor has he ever communicated with any of the attorneys in his firm about Schuppert or the defendant. Id. McLeod states that he has not discussed this case or the facts underlying the litigation with any attorney in his firm (or anyone else), that he will continue to have no involvement in or communication regarding this case, that he "know[s] nothing" about the litigation in this case and that the other attorneys in the firm know nothing about his consultation with Schuppert. Id. at 2.

Absent from Schuppert's declaration is the information about McLeod informing her that he would not be representing her. It does not appear that there was an attorney-client relationship between Schuppert and the Olson Firm in February and March 2020. Schuppert says that she provided confidential information to McLeod, but she does not assert that she believed that McLeod was her lawyer at that time, and McLeod says that he answered Schuppert's questions during a one-hour conversation and subsequently told Schuppert that he was not going to represent her; he also avers that he does not have an ongoing attorney-client relationship with her. Dkt. No. 18-1 at ¶¶3, 5. It appears that there was no "work performed," and the court has little information about the circumstances under which the allegedly confidential information was divulged. Based on this limited information, it appears that Schuppert was, at best, a "prospective client" under SCR 20:1.18.

Schuppert also implies, without directly saying so, that at some point before the March 2020 conversation she had a relationship with the Olson

Firm that involved some regular review of contracts. Defense counsel filed an affidavit, averring that the Olson Firm represented Schuppert in the 1990s regarding commissions due to Schuppert from her then-employer, US Cellular Company, and again in 2018 on a dispute between her and the human resources manager when Schuppert worked for the Racine Unified School District. Dkt. No. 15. Defense counsel also indicates that the winter/spring 2020 consultation between Schuppert and McLeod related to Schuppert's concern that in her employment with the defendant, she might be liable for disparate treatment of employees based on race. Id.

Defense counsel's affidavit does not mention the regular-review-of-contracts relationship. Rather, Huitink describes three, apparently separate representations—Olson's advice to Schuppert in the 1990s in an employment dispute related to payment of commission by her employer, U.S. Cellular; a 2018 "representation" involving a dispute between Schuppert and her direct supervisor at the Racine Unified School District; and the March 2020 consultation with McLeod. Dkt. No. 15.

Perhaps Schuppert had an attorney-client relationship with the Olson Firm sometime prior to 2019, when she began working for the defendant. But as the court explains below, any prior relationship does not appear to have been "substantially related" to this litigation.

22

3.    *The Substantially Related Test*

a.    Factual reconstruction

The first prong of the "substantially related" test requires the court to factually reconstruct the scope of the prior legal representation, or representations. Schuppert says that she "previously had an attorney-client relationship" with the Olson Firm "for review of compensation and employment contracts." Dkt. No. 21 at 1. She does not provide a timeframe for that relationship or indicate when it ended. She does not explain whether the Olson Firm represented her personally or whether it represented an entity that employed her. The only other interaction with the Olson Firm that Schuppert describes is what she refers to as the "March 2020" consultation with McLeod. Id. at 1-2. She says that she consulted with McLeod "regarding a human resources matter" at the defendant company. Id. at 1. She declares that during the consultation, she "provided and discussed information related to [the defendant's] employment policies and procedures, as well as their application within the company." Id.

Defense counsel Huitink avers that Schuppert's testimony is "key" to this lawsuit, "because she is responsible for implementing [the defendant's] employment policies, which include[] the approval of FMLA leave and executing the termination of employees." Dkt. No. 15 at ¶4. He avers that Schuppert's deposition was scheduled for May 12 (presumably 2021), but that in the days leading up to the deposition, he discovered that the "Olson firm had a lengthy attorney-client relationship with Ms. Schuppert" dating back to the 1990s. Id.

23

at ¶¶5, 6. He stated that in the 1990s, "Olson gave Ms. Schuppert advice in an employment dispute related [to] payment of commissions" by her then-employer U.S. Cellular Company. Id. at ¶7. The affidavit further states that in 2018, the Olson Firm again represented Schuppert in a dispute between Schuppert and her direct supervisor in the HR department of the Racine Unified School District. Id. at ¶¶8, 9. Finally, the affidavit alleges that in March of 2020, McLeod spoke with Schuppert when she was seeking advice about the termination of one of the defendant's employees; specifically, she expressed concern that she "might be personally liable for the allegedly disparate treatment of employees of different races." Id. at ¶¶10-14. Huitink averred that in addition to the specific concerns, McLeod and Schuppert discussed Schuppert's "role as HR director, [the defendant's] employment policies, her application of those policies on behalf of the company, and her role in terminating employees." Id. at ¶15.

Attorney McLeod avers that on February 28, 2020, Schuppert sought advice from him regarding an incident involving the termination of one of the defendant's employees. He avers that the consultation lasted one hour, during which McLeod answered Schuppert's questions; he does not describe the substance of those questions. Dkt. No. 18-1 at ¶2. McLeod says that on March 4, 2020, he had follow-up communication with Schuppert, "confirming" that he would not be representing her. Id. at ¶3.

24

b.      Reasonable inference regarding the confidential
        information given

Next, the court must decide whether it is reasonable to infer that confidential information of the type Schuppert alleges she provided during the February 28, 2020 consultation would have been given to the Olson Firm. Schuppert does not allege that she provided any confidential information to the Olson Firm during her "prior relationship," the one that involved review of compensation and employment contracts. She does not assert that she disclosed any confidential information to the Olson Firm during the U.S. Cellular commissions representation, or the representation regarding the human resources employee at the Racine school district; she does not mention those representations at all.

The only "representation" during which Schuppert claims that she provided the Olson Firm with confidential information is the consultation with McLeod in February 2020. Schuppert says that she conferred with McLeod regarding a human resources matter at the defendant corporation. Defense counsel avers that Schuppert consulted with McLeod about her potential personal liability for alleged disparate treatment of employees of different races in relation to termination of one of the defendant's employees.

The question is not whether Schuppert disclosed confidential information to McLeod in February 2020, but whether it is reasonable to infer under the circumstances that she could have done so. Although the evidence is sparse,[5] it

_____

[5] Courts must use caution when dealing with an underdeveloped record:

is reasonable for the court to infer that if the defendant's human resources manager conferred with a lawyer at the Olson Firm regarding her potential liability for alleged disparate treatment of employees of different races in relation to the termination of one of the defendant's employees, she might have disclosed confidential information about the defendant's human resources policies to that lawyer.

          c.      Relevance of the information given to the issues raised in the instant litigation

The third prong of the substantial relationship test requires the court to decide whether the information provided to the alleged "tainted" lawyer is relevant to the issues raised in the current litigation. Even if the court assumes that Schuppert had an attorney-client relationship with McLeod in February 2020 (which is does not appear that she did) and accepts at face value the limited factual assertions made by Schuppert and defense counsel, the defendant has not demonstrated that information Schuppert provided to McLeod in February 2020 is relevant to the dispute in this case. The plaintiff has alleged that the *defendant*—not necessarily Schuppert, or even Schuppert acting on the defendant's behalf—fired the plaintiff for exercising her rights

---

        [C]ounsel . . . should not only be allowed to protect their relationship with their present client but also their good name and reputation for high ethical standards . . . a summary disqualification order, *based on a scant record* of this type, can be irreparable harm to an attorney's or law firm's professional reputation.

See <u>Analytica, Inc.</u>, 708 F.2d at 1275 (Coffey, J. dissenting) (emphasis added).

under the FMLA.[6] Dkt. No. 1. Defense counsel states in his affidavit that Schuppert is "responsible for implementing [the defendant's] employment policies, which includes the approval of FMLA leave and executing the termination of employees." Dkt. No. 15 at ¶4. But the complaint does not mention Schuppert and Schuppert's declaration states only that the information that she shared with McLeod "could be" relevant to the instant lawsuit.

Defense counsel avers that Schuppert consulted McLeod about "an incident involving termination of a [defendant's] employee" because she was "concerned that she might be personally liable for the allegedly disparate treatment of employees of different races." Dkt. No. 15 at ¶¶11, 13. While the plaintiff's FMLA claims against the defendant and Schuppert's 2020 consultation with Attorney McLeod regarding her potential liability both relate to "employment law" and both involve the termination of an employee, the defendant has not explained how information Schuppert may have provided McLeod about the defendant's human resources policies and their application—particularly if Schuppert was consulting McLeod about her own potential liability for a termination that had raised questions about *disparate treatment based on race*—is relevant to the plaintiff's claim that the company fired her for exercising her *FMLA rights*. "Incidental similarities between the

---

[6] The court understands that *defense counsel* has averred that Schuppert was involved in the termination of the plaintiff. But the *plaintiff* has not made that allegation.

prior and current representation do not support disqualification." <u>Foley-Ciccantelli</u>, 333 Wis.2d at 456.

        4.    *Reasonable Measures and Screening*

        Finally, even if McLeod received disqualifying information—information that could be significantly harmful to the defendant in this case—Wisconsin Supreme Court Rule 20:1.18(d)(2) says that the Olson Firm's representation is permissible if McLeod took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent Schuppert and he is timely screened from any participation in the matter and is apportioned no part of the fee from it and written notice is given promptly to the prospective client.

        As noted above, McLeod has averred that he spoke with Schuppert on March 4, 2020—five days after the February 28, 2020 consultation—and told her he would not be representing her. He has averred that he didn't communicate with Schuppert about the plaintiff in this case and that he didn't communicate with any of the attorneys in his firm about Schuppert or the defendant. He has averred that he has not discussed this case or the facts underlying the litigation with any attorney in his firm, that he will not have any involvement in or communication regarding this case, that he "know[s] nothing" about the litigation in this case and that the other attorneys in the firm know nothing about his consultation with Schuppert.

        Attorney Alan Olson also submitted an affidavit. Dkt. No. 18-2. Olson also avers that the firm has no on-going relationship with Schuppert, that he

28

has not communicated with anyone about Schuppert's consultation with McLeod, that none of the lawyers representing the plaintiff have communicated with McLeod about the defendant or about this litigation, that McLeod will have nothing to do with this litigation and will have no communication with anyone about this litigation and that the attorneys representing the plaintiff in this litigation know nothing about McLeod's consultation with Schuppert. Id. at 1-2.

Attorney McLeod took "reasonable measures" to avoid obtaining more information than necessary—he advised Schuppert five days after their consultation that he would not be representing her. The firm is screening McLeod from this litigation. Even if McLeod received disqualifying information during the February 28, 2020 consultation with Schuppert, he and the firm have taken the steps required to render the Olson Firm's representation of the plaintiff permissible.

F.    Conclusion

Because it does not appear that Schuppert had an attorney-client relationship with McLeod in February 2020; because the evidence does not indicate that whatever information Schuppert may have disclosed to McLeod about the defendant's human resources policies and their application is relevant to the allegations in this lawsuit; and because the firm has screened McLeod from this case and the attorneys on this case from McLeod, the court **DENIES WITHOUT PREJUDICE** the defendant's motion to disqualify counsel. Dkt. No. 13.

Because the deadlines in the court's February 24, 2021 scheduling order have passed, the court **ORDERS** that the parties must file a joint status report by the end of the day on **April 22, 2022** advising the court of how they would like to proceed.

Dated in Milwaukee, Wisconsin this 29th day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**